**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**EVERETT CASH INSURANCE CO.,**

**Plaintiff,**

Civil Action 2:24-cv-4227

**v.**

**Magistrate Judge Kimberly A. Jolson**

**LORA HOWELL, et al.,**

**Defendants.**

**OPINION & ORDER**

Before the Court is Third-Party Defendants Jacobs Vanaman Agency Inc. and David Fitch's Motion for Judgment on the Pleadings. (Doc. 35). The Court also considers Third-Party Plaintiffs Lora and Justin Howell's Motion for Leave to Amend (Doc. 38). For the following reasons, the Court **GRANTS in part and DENIES in part** both Motions.

**I.     BACKGROUND**

This matter began as a declaratory judgment action pertaining to an all-terrain vehicle crash. As alleged, Everett Cash Mutual Insurance Company issued a farm owner's insurance policy to Lora Howell. (Doc. 1 at ¶¶ 2, 9; *see also* Doc. 1-1). Effective June 21, 2023, through June 21, 2024, the Everett Policy covers Lora Howell and family members who live with her. (Doc. 1 at ¶¶ 10, 11). Relevant here, the Everett Policy endorses a Polaris Ranger ATV ("Polaris ATV") but excludes coverage under certain circumstances. (Doc. 1 at ¶¶ 13–15; *see also* Doc. 1-1 at 2).

According to the Complaint, Justin Howell, a resident of Lora's household, drove himself and three friends to dinner on the Polaris ATV on February 10, 2024. (*Id.* at ¶¶ 12, 19–22). While returning home on a public road, Justin lost control while driving. Tragically, Lauren Ellis was

thrown from the Polaris ATV and severely injured.  (*Id.* at ¶¶ 22–24).  Ellis subsequently filed a tort action in state court against the Howells for her injuries.  (*See also* Doc. 17-1).  Later, Everett Insurance brought this federal lawsuit seeking a declaratory judgment that it owes no duty to defend or indemnify the Howells against Ellis' claims under the Everett Policy.  (Doc. 1 at ¶¶ 30–31, 36–37).

Following the Court's Opinion and Order denying their motion to dismiss (Doc. 19), the Howell Defendants filed an answer, a counterclaim for breach of contract, and a third-party complaint against Grange Indemnity Insurance Company ("Grange"), Progressive Specialty Insurance Company ("Progressive"), Jacobs Vanaman Agency, Inc. ("JVA"), and insurance agent David Fitch.  (*See generally* Doc. 23).  The Third-Party Complaint alleges breach of contract claims against Grange and Progressive.  (*Id.* at ¶¶ 71–84 (also seeking a declaratory judgment that Progressive and Grange owe the Howells coverage under applicable policies)).

Relevant here, the Third-Party Complaint also alleges negligence against JVA and Fitch. Specifically, the Howells assert that several months before the Polaris ATV crash, JVA and Fitch worked to procure a new insurance policy on Lora's behalf.  (*Id.* at ¶¶ 66–68).  In doing so, they represented that they would obtain the same coverage as under her existing policies (the "Mutual Policies") but at a lower cost.  (*Id.* at ¶ 69).  In July 2023, they procured an insurance policy that was then issued by Everett Insurance—the same one at issue now.  (*Id.* at ¶ 68).  But, according to the Howells, the coverage under the Everett Policy was "materially inferior" to and more expensive than the coverage under the Mutual Policies.  (*Id.* at ¶ 70).  Because of this, the Howells claim that JVA and Fitch were negligent in providing Lora false information to guide her insurance decision and in procuring the Everett Policy itself.  (*Id.* at ¶¶ 85–93).  And their negligence harmed her. (*Id.* at ¶¶ 89, 93).

2

JVA and Fitch (collectively the "Third-Party Defendants") subsequently filed a Motion for Judgment on the pleadings, seeking dismissal of the Howells' negligence claim with prejudice. (Doc. 35).  The Howells opposed the Motion and moved, as an alternative to dismissal, for leave to file an amended third-party complaint.  (Doc. 38).  The Howells did not provide their proposed Amendment until their reply brief (Doc. 41-1), so the Court granted the Third-Party Defendants leave to respond.  (Doc. 42).  Both motions are briefed and ready for consideration.  (Docs. 35, 38, 40, 41, 43, 46).

## II.     STANDARD

Three federal rules matter here.  First, the Federal Rules of Civil Procedure provide that, "after the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment may be granted under Rule 12(c) where the moving parties clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law."  *Williamson v. Recovery Ltd. P'ship*, No. 2:06-cv-292, 2010 WL 3769136, at *2 (S.D. Ohio Sept. 24, 2010) (citations omitted).   In examining a Rule 12(c) motion, the Court uses the same standard of review applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *Mixon v. State of Ohio*, 193 F.3d 389, 399–400 (6th Cir. 1999).  As such, the Court "must construe the complaint in a light most favorable to plaintiffs, accept all well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief."  *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).  To survive a motion for judgment on the pleadings, the "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory."  *Bishop*, 520 F.3d at 519 (internal quotation

marks omitted).  Consequently, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

While the Court's view on a Rule 12 motion is typically limited to the pleadings, *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020), the Court may also consider written instruments attached to the pleadings, including contracts between parties.  *See Smith v. City of Barberton*, No. 1:20-cv-584, 2021 WL 752595, at *3 (N.D. Ohio Feb. 26, 2021).

Next, under Rule 15, when a party seeks leave of court to amend a pleading, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This rule "reinforce[s] the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'"  *Inge v. Rock Finan. Corp.*, 388 F.3d 930, 936 (6th Cir. 2004) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986)).  In interpreting this Rule, "[i]t should be emphasized that the case law in this Circuit manifests liberality in allowing amendments to a complaint."  *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (citation modified).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 640–41 (6th Cir. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Trial courts enjoy broad discretion in deciding motions for leave to amend.  *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990).

Yet, "[o]nce a pleading deadline has passed, litigants must meet the higher threshold for modifying a scheduling order found in Rule 16(b)" before considering the proposed amendment under Rule 15.  *Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008)

4

(citing *Leary v. Daeschner*, 349 F.3d 888, 906–07 (6th Cir. 2003)).  "[T]he touchstone of the good cause inquiry under Rule 16(b) is whether the moving party acted diligently in attempting to meet the deadline set forth in the pretrial order."  *Permasteelisa CS Corp. v. Airolite Co., LLC*, No. 2:06-cv-0569, 2007 WL 1683668, at *2 (S.D. Ohio June 8, 2007).  The Court must also consider "the potential prejudice" to the other parties.  *Leary*, 349 F.3d at 909.

## III.  DISCUSSION

The Court first turns to the Third-Party Defendants' Motion for Judgment on the Pleadings, which argues that the Howells fail to state a claim for negligent procurement and negligent misrepresentation.  Because the Court finds the Motion at least partially meritorious, the Court then considers whether the Howells should be allowed to amend as an alternative to dismissal.

### A.       Sufficiency of the Third-Party Complaint

The Third-Party Defendants read two subset negligence claims into the Howells' allegations: a negligent procurement claim and negligent misrepresentation claim.  (*See generally* Doc. 35; *see also* Doc. 23 at ¶¶ 84–93).  Both, they say, fail.  (Doc. 35).  They assert the economic loss doctrine bars the first, and the Howells inadequately state a claim for the second.  Ultimately, the Court agrees with the first argument but not the second.

#### 1.       Negligent Procurement

To begin, "Ohio law recognizes a tort claim against insurance agents for negligent procurement.  An agent will be held liable if, 'as a result of his or her negligent failure to perform that obligation to procure insurance, the other party to the insurance contract suffers a loss because of a want of insurance coverage contemplated by the agent's undertaking.'"  *Emahiser v. Complete Coverage Ins., LLP*, 53 F. Supp. 3d 1025 (N.D. Ohio 2014) (quoting *Robson v. Quentin E. Cadd Agency*, 901 N.E.2d 835, 841 (Ohio Ct. App. 2008)).  "If an insurance agent's negligence results

in coverage less than that desired by an insured, the agent will be liable for the amount the insured would have received had the correct coverage been in place." *Robson*, 901 N.E.2d at 841 (citation omitted).

At the same time, "the economic-loss rule generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005) (citation omitted). The rule—which generally bars a plaintiff who has suffered only economic loss due to negligence from recovery—"stems from the recognition of a balance between tort law, designed to redress losses suffered by breach of a duty imposed by law to protect societal interests, and contract law, which holds that 'parties to a commercial transaction should remain free to govern their own affairs.'" *Id.* (quoting *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* 537 N.E.2d 624 (Ohio 1989)); *see also All Erection & Crane Rental Corp. v. Acordia Nw., Inc.*, 162 F. App'x 554, 559 (6th Cir. 2006) ("[A] plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." (citation omitted)). Said another way, "[t]he economic loss doctrine holds that absent tangible physical harm to persons or tangible things there is generally no duty to exercise reasonable care to avoid economic losses to others . . . These economic losses may be recovered in contract only." *Long v. Time Ins. Co.*, 572 F. Supp. 2d 907, 911 (S.D. Ohio 2008) (citations omitted). Notably, courts have applied the economic loss doctrine to negligent procurement claims that assert no personal injury or property damage. *See, e.g.*, *Potts v. Safeco Ins. Co.*, No. 2009CA0083, 2010 WL 1839738, at *4 (Ohio Ct. App. 2010) (finding a trial court did not err in granting summary judgment because "simple negligence claims, including negligent procurement claims . . . are barred by the economic loss doctrine").

Here, the Howells assert that because of the Third-Party Defendants' negligence, Lora

6

suffered damages "including but not limited to, inadequate coverage and financial loss arising from claims brought under the new policy." (Doc. 23 at ¶ 89; *see also id.* at ¶ 93 ("As a direct and proximate result of [the Third-Party Defendants'] negligence, Lora sustained damages.")). These are economic damages, and the Third-Party Complaint does not mention, let alone plead, any non-economic damages flowing from the Third-Party Defendants' alleged negligence. (*See id.* at ¶¶ 84–93). On first blush, then, the economic loss doctrine applies.

The Howells resist this conclusion by positing that the economic loss rule does not apply where the insurance agent owes a duty to an insured that is independent of a contract between them. (Doc. 38 at 4–5). They cite to *Minor v. Allstate Insurance Company*, 675 N.E.2d 550 (Ohio Ct. App. 1996), for the notion that in Ohio, insurance agents have a common-law duty to exercise good faith and reasonable diligence in obtaining the insurance requested by an insured. (Doc. 38 at 4). Because that duty is distinct from any duty created by a contract, the underpinnings of the economic loss doctrine do not apply. (*Id.*). The Howells claim that JVA and Fitch failed to procure a sufficient policy, despite representing they would do so. (*Id.* at 5; *see also* Doc. 23 at ¶¶ 86–89). So, they say, any breach occurred "prior to and independent of" the Everett Policy. (*Id.* (citing *Kunz v. Buckeye Union Ins. Co.*, N.E.2d 1194 (Ohio 1982)). Because the claim arises from pre-contract conduct "meant to guide the Howells' purchase decision" and does not "seek recovery solely for a contractual breach," the Court should not apply to economic loss rule or dismiss the claim. (Doc. 38 at 5). The Court remains unpersuaded.

In *Minor*, the Ohio court commented that an insurance agent who "undertakes to procure insurance for another is obligated to do so. The agent is liable if, as a result of [his] negligent failure to perform that obligation, the other party to the contract suffers a loss because of a want of the insurance coverage contemplated by the agent's undertaking." 675 N.E.2d at 554. This

7

Court and others have resisted reading this passage as creating an exception to the economic loss doctrine merely based on an agent's obligation to procure insurance.  Importantly, the *Minor* court did not consider the economic loss doctrine as a defense to a negligent procurement claim.  *See, e.g.*, *Mafcote, Inc. v. Genatt Assocs., Inc.*, No. 104-CV-853, 2007 WL 527870, at *6 (S.D. Ohio Feb. 14, 2007) (noting the economic loss rule issue was not raised in *Minor*); *J.F. Meskill Enters., LLC v. Acuity*, No. 05-CV-2955, 2006 WL 903207, at *5 (N.D. Ohio Apr. 7, 2006) ("Some Ohio Courts have held that insurance agents or brokers have a duty to exercise reasonable care in procuring the requested insurance. However, the economic loss doctrine was not asserted in those cases.").  *Minor* thus has "limited precedential value when weighed against the thoughtful analysis of the economic loss doctrine in the insurance context" by other courts.  *Burke v. Time Ins. Co.*, No. 3:10-CV-00478, 2011 WL 2600673, at *3 (S.D. Ohio June 9, 2011) (citation omitted), *report and recommendation adopted*, No. 3:10CV00478, 2011 WL 2580325 (S.D. Ohio June 29, 2011).

On that point, "[c]ourts that have considered both the insurers duty to the insured and the economic loss doctrine have consistently found that the economic loss doctrine bars recovery in negligence actions."  *Id.* (collecting cases); *see also Momentive Speciality Chems., Inc. v. Chartis Speciality Ins. Co.*, No. 2:11-CV-00583, 2012 WL 832288, at *4 (S.D. Ohio Mar. 12, 2012) ("It has been repeatedly held that regardless of the general duty owed by an insurance broker to an insured to exercise diligence in obtaining insurance, the economic loss doctrine bars pure negligence claims (and professional negligence claims) against insurance companies, agents or brokers.") (collecting cases).  For example, in *All Erection & Crane Rental Corporation. v. Acordia Northwest, Inc.*, the Sixth Circuit rejected the argument that the economic loss doctrine should not apply where an insurance agent "owes to its client a duty to exercise good faith and reasonable diligence in undertaking the acquisition of coverage."  162 F. App'x at 559 (affirming

the trial court's application of the rule where a plaintiff brought a negligence claim against an insurance broker). Similarly in *J.F. Meskill Enterprises, LLC v. Acuity*, the court rejected a "professional negligence" claim, finding it "highly unlikely that the Ohio Supreme Court would recognize an independent insurance broker malpractice claim in light of its recent economic loss decisions." 2006 WL 903207, at *5 (also noting that an Ohio Supreme Court decision stating that "an action against an insurer was 'roughly analogous to a malpractice action'" predated Ohio's "wholesale adoption of the economic loss doctrine" (quoting *Kunz v. Buckeye Union Ins. Co.*, 437 N.E.2d 1194, 1196 (Ohio 1982))).

In light of this precedent, the Howells cannot save their negligent procurement claim even if they allege the Third-Party Defendants "violat[ed] professional duties that exist regardless of the policy's terms." (Doc. 38 at 5; *see also* Doc. 23 at ¶ 87 ("The Insurance Agency and the Agent failed to exercise reasonable care or competence in obtaining accurate information regarding the scope and quality of the proposed replacement policy.")). The economic loss doctrine still bars a negligent procurement claim and it is **DISMISSED**.

### 2. Negligent Misrepresentation

Next, the Third-Party Defendants assert that the Howells' negligent misrepresentation claim fails because they (1) do not set forth sufficient facts and (2) do not allege a special relationship with JVA or Fitch. Neither argument is persuasive.

#### a. Sufficiency of Factual Allegations

Starting with the sufficiency of the Third-Party Complaint's factual allegations, as noted above, a complaint must consist of more than a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 570. Relevant here, under Ohio law, to succeed on a claim for negligent misrepresentation, a party must show the defendant: "(1) supplie[d] false information;

9

(2) for the guidance of others in their business transactions; (3) causing pecuniary loss to the plaintiff; (4) while the plaintiff justifiably relied on the information; and (5) while the defendant failed to exercise reasonable care in obtaining or communicating the information." *Oro Cap. Advisors, LLC v. Borror Constr. Co., LLC*, No. 2:19-CV-5087, 2021 WL 2457989, at *7 (S.D. Ohio June 16, 2021) (citation omitted); *see also Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989) (quoting 3 Restatement (Second) of Torts 126–27, § 552(1) (1965)).

In their Third-Party Complaint, the Howells allege that both JVA and Fitch were engaged in the business of procuring insurance coverage for clients. (Doc. 23 at ¶¶ 66–67). They represented to Lora before July 6, 2023, that they would obtain an insurance policy for her that had "the same coverage to her existing policy at a lower premium." (*Id.* at ¶ 69). But the policy they procured for her, which was then issued by Everett Insurance, was "materially inferior" and "more expensive." (*Id.* at ¶ 70). They go on to allege that the Third-Party Defendants failed to exercise reasonable care in obtaining the information related to the scope and quality of the proposed replacement policy. (*Id.* at ¶¶ 87, 92). And, after Lora relied upon their representation and agreed to purchase the policy, she experienced inadequate coverage and financial loss. (*Id.* at ¶¶ 90, 93).

The Third-Party Defendants argue that more robust pleading is required. Specifically, they say that the Howells must "allege facts regarding [Lora's] prior policy, the cost of her prior policy, [and] what coverage her prior policy provided." (Doc. 35 at 10). Further, the complaint must specify "how or why" the information provided by JVA or Fitch was inaccurate. (*Id.* at 11). These supposed deficiencies concern the first element of a negligent misrepresentation claim: the false information the Third-Party Defendants allegedly supplied Lora Howell.

This Court has noted negligent misrepresentation claims require "an allegation that one

10

affirmatively supplied false information." *Bd. of Trs. of IBEW Fund Loc. No. 82 Pension Fund v. Bright St., LLC*, No. 3:16-CV-481, 2018 WL 4560828, at *4 (S.D. Ohio Sept. 21, 2018) (citation omitted). To this end, a party must provide "what the false representation was, who made the affirmative representation, [and] when it was made." *Id.* at *5. The Howells' Third-Party Complaint does just that. Particularly, they allege that prior to July 6, 2023, JVA and Fitch represented to Lora that the insurance policy they would procure for her "would obtain the same coverage to her existing policy at a lower premium"; but that the coverage was, in actuality, inferior and more expensive. (Doc. 23 at ¶¶ 68–70). These allegations are not, as the Third-Party Defendants suggest, boilerplate recitations of the elements for negligent misrepresentation. They give the Third-Party Defendants notice of who, what, and (roughly) when. The Third-Party Defendants provide no caselaw suggesting that the Howells must meet a higher pleading bar at this stage of litigation. (*See generally* Doc. 35).

Consequently, the Third-Party Defendants have not carried their burden to demonstrate the negligent misrepresentation claim as alleged is legally insufficient. But that is not their only argument.

b.      *A "Special Relationship"*

The Third-Party Defendants further attack the Third-Party Complaint for not properly alleging a "special relationship" between Lora and JVA or Fitch. (Doc. 35 at 9–10).

Whether a party must allege that they had a "special relationship" with another who engaged in negligent misrepresentation is an "unsettled" area of Ohio law. *See, e.g.*, *MV Cir. Design, Inc. v. Omnicell, Inc.*, No. 1:14 CV 2028, 2015 WL 1321743, at *12 (N.D. Ohio Mar. 24, 2015) (collecting cases). This Court recently observed that the "'special relationship' element has been applied in some courts to limit the reach of negligent misrepresentation claims and exclude

11

'ordinary business transactions.'" *Cadence Bank, N.A. v. Hurl*, No. 2:20-CV-6403, 2022 WL 769506, at *6 (S.D. Ohio Mar. 14, 2022) (citing *Palmer-Donavin Mfg. Co. v. Rheem Sales Co.*, 2014 WL 2767665, at *8 (S.D. Ohio June 18, 2014)).  Though "not exactly equal to a fiduciary relationship," this special relationship "hinges on whether the defendant is 'in the business of supplying information for the guidance of others' and the plaintiff pays the defendant for information to make business decisions."  *Oro Cap. Advisors, LLC*, 2021 WL 2457989, at *8 (citing *Ziegler v. Findlay Indus., Inc.*, 464 F. Supp. 2d 733, 738 (N.D. Ohio 2006)).  Examples include: "attorneys, surveyors, abstractors of title, banks dealing with nondepositors' checks, and investment advisors."  *Id.* (collecting cases).

Against this backdrop, the Third-Party Defendants present two sticking points.  First, the Howells do not allege that JVA or Fitch are in the business of supplying information for the guidance of others.  (Doc. 35 at 9–10).  And second, the relationship between an insurance agent and a client is not special enough relationship for negligent misrepresentation.  (*Id.*).  Rather, their relationship with the Howells is "ordinary."  (*Id.*).

As for the first, reading the Third-Party Complaint as a whole, the Court finds the Howells' allegations are enough at this stage.  The Howells allege that both JVA and Fitch are engaged in the business of procuring insurance coverage for clients.  (Doc. 23 at ¶¶ 66–67).  In the course of its business, it supplied information—specifically that the new, cheaper policy would encompass the same coverage as her existing policy—to Lora to guide her decision in obtaining insurance coverage.  (*Id.* at ¶ 85).  Though not at issue in the Motion for Judgment on the Pleadings, the Court also notes that in the Howells' proposed Amended Third-Party Complaint, they add allegations bolstering this element.  (*See* Doc. 41-1 at ¶¶ 22–23 (alleging the Third-Party Defendants are "engaged in the business of advising clients, evaluating their insurance needs, and

12

procuring appropriate insurance coverage for clients")).

As for the second, this Court has hesitated to find that a party must plead "a special relationship exclusive of ordinary business transactions." *Cadence Bank*, 2022 WL 769506, at \*6. Rather, when Ohio courts contemplate a "special relationship" for the purposes of a negligent misrepresentation claim "the discussion appears to be related to the requirement that a defendant supply false information for the guidance of the plaintiff in its business transactions" which "'serves to limit the class of potential plaintiffs,' and precludes claims over misrepresentations 'intended to reach an extensive, unresolved class of persons.'" *Id.* at \*7 (quoting *National Mulch and Seed, Inc. v. Rexius Forest By-Products, Inc.*, 2007 WL 894833, at \*9–12 (S.D. Ohio Mar. 22, 2007)); *see also Amann v. Clear Channel Commc'ns*, 846 N.E.2d 95,100 (Ohio Ct. App. 2006) ("The Restatement clearly indicates that liability may be imposed for negligent misrepresentation only if the disseminator of the information intends to supply it to a specific person or to a limited group of people."). This understanding of a special relationship "would not preclude negligent misrepresentation claim between . . . parties in ordinary business transactions." *Id.* (citation modified).

Consistent with its past approach, the Court concludes that "[r]ather than foreclosing relief on unsettled grounds, the prudent course is to preserve" the Howells' negligent misrepresentation claim for now and to "wait to see what discovery shows the parties' true relationship was." *Id.* (citation and internal quotation marks omitted); *see also Amann*, 846 N.E.2d at 100–01 ("Precedent indicates that a determination whether the plaintiff is part of a limited group of people is fact-specific and requires a close analysis of the relationship between the parties."). Caution is especially appropriate here where the Third-Party Defendants fail to provide precedent standing squarely for the notion that an insured's relationship with her insurance agent or insurance agency

13

cannot be special in any instance for the purposes of a negligent misrepresentation claim. *Compare Stickney v. United Ins. Grp. Agency, Inc.*, No. 3:13-CV-235, 2015 WL 11176515 (S.D. Ohio Aug. 11, 2015) (stating only that generally an insured's relationship with an agent that sells her insurance is not a fiduciary one and that an insured's reliance on her agent is not sufficient to establish a fiduciary relationship) *with Oro Cap. Advisors, LLC*, 2021 WL 2457989, at *8 (comparing the similarities between a special relationship and a fiduciary one, but noting they are "not exactly equal").

All told, the Howells' negligent misrepresentation claim may proceed at this juncture. Accordingly, the Court **DENIES** this portion of the Third-Party Defendants' Motion for Judgment on the Pleadings.

### B.      Amendment as an Alternative to Dismissal

In response to the Third-Party Defendants' arguments for dismissal, the Howells suggest that, as an alternative, they should be able to amend their complaint. The proposed Amended Third-Party Complaint looks to "clarify existing allegations" in response to the Motion for Judgment on the Pleadings. (Doc 38 at 8; *see* Doc. 41-1). They further seek to assert a breach of contract/quasi-contract claim in the alternative to their negligence claims. (Doc. 38 at 9; Doc. 41-1 at 6–9). And they attach the Everett Policy and the Mutual Policies Lora's to the proposed amendment. (Doc. 41-2; *see also* Doc. 38 at 9 (noting the Howells did not obtain copies of the policies until recently)).

In evaluating the Howells' request, the Court scrutinizes whether the Howells may amend under the applicable Federal Rules. As part of that analysis, the Court considers JVA and Fitch's position that the amendment would be futile. While the Court concludes that the Howells may be allowed to amend their complaint under the Federal Rules, their amendment would be futile as

proposed at least in part.

### 1. Federal Rules of Civil Procedure 15 and 16

As stated, the Federal Rules instruct the Court to grant a party leave to amend its pleading "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). A heightened standard applies when such a request is made outside of the time dictated by the scheduling order. In that case, the movant must first show good cause for modifying the schedule. Fed. R. Civ. P. 16(b)(4). To this end, courts consider a party's diligence in seeking leave to amend and possible prejudice to the opposing party. *Permasteelisa CS Corp.*, 2007 WL 1683668, at *2; *Leary*, 349 F.3d at 909.

The Third-Party Defendants maintain that the more onerous Rule 16 standard should apply first because the Howells did not seek leave to amend prior to May 12, 2025, as dictated by the scheduling order. (Doc. 43 at 6; *see also* Doc. 14 at 1 (scheduling order)). This argument is somewhat inapt, as the Howells did not file their Third-Party Complaint until July 9, 2025. (*See* Doc. 23). So, they could never have met the original May 12 deadline. At any rate, the Court finds that to the extent Rule 16 applies, the Howells were diligent in seeking leave to amend and amendment will not unduly prejudice the Third-Party Defendants.

Courts have found sufficient diligence where parties moved for amendment quickly after new information is discovered. *See, e.g.*, *Rover Pipeline LLC v. Zwick*, No. 2:19-CV-4698, 2021 WL 2665502 (S.D. Ohio 2021) (finding good cause where plaintiff quickly moved to amend after learning of defendant's legal position via defendant's motion for summary judgment); *Aldridge v. Ohio Dep't of Rehab. & Correction*, No. 2:20-CV-6357, 2021 WL 5299845 (S.D. Ohio 2021) (finding good cause where a right-to-sue letter and state lawsuit initiation occurred after the deadline for amendment and plaintiff shortly thereafter moved to add the new facts to his complaint); *Myers v. Vill. of New Holland*, No. 2:19-CV-1458, 2020 WL 7767622 (S.D. Ohio

15

2020) (finding good cause where the amendment was partially based upon newly discovered evidence after the passing of the deadline).  Here, the Howells state that they obtained a copy of the Mutual Policies via subpoena on November 3, 2025.  (Doc. 38 at 9).  They sought leave to amend, based in large part on the contents of those policies, two days later.  (*Id.*).  This quick turnaround demonstrates diligence.  Further, the Third-Party Defendants do not identify any specific prejudice they will unduly face if the Howells are granted leave to amend.  (*See* Doc. 40 at 7–8; Doc. 43 at 4–7).  At base, though the Howells fail to cite the good cause standard in their amendment request, the Court finds the substance of their request sufficient under Rule 16.

The Court now turns to the Third-Party Defendants' arguments under Rule 15 that the Howells should be denied leave to amend because their proposed amendment is futile.  "[A]n amendment would be futile 'if the claim, even with the amendment, could not withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss.'"  *Pough v. DeWine*, No. 2:21-CV-880, 2024 WL 4284649, at *4 (S.D. Ohio Sept. 25, 2024) (quoting *Green v. Mason*, 504 F. Supp. 3d 813, 826 (S.D. Ohio 2020)), *appeal dismissed*, No. 24-3949, 2025 WL 1232508 (6th Cir. Feb. 5, 2025).  Under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face" to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007).  In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true.  *Id.* at 570.

The Third-Party Defendants argue that each of the Howells' claims against them in the proposed Amended Third-Party Complaint would be futile.  (Doc. 43).  Specifically, they maintain that the negligent procurement claim is barred by the economic loss doctrine.  (*Id.* at 7–12).  They further contend that the Howells fail to state either a negligent misrepresentation or breach of contract/quasi-contract claim.  (*Id.*).  The Court agrees with some of these assertions, but not all.

16

2.      *Futility of the Negligent Procurement Claim*

The Court need not belabor the first point.  As previously explained, the operative Third-Party Complaint's negligent procurement claim is barred by virtue of the economic loss rule.  The Howells' proposed amendment seemingly attempts to get around the rule by alleging,

> [JVA and Fitch], as insurance professionals, owed Lora a duty of care independent of any contract, including the duties to: exercise reasonable care, skill, and diligence in evaluation her insurance needs; provide accurate information about available policies; refrain from making false of misleading statements regarding coverage; and procure the insurance coverage they undertook to obtain.

(Doc. 41-1 at ¶ 52).  As explained, courts apply the economic loss rule even when a party premises a claim upon the more general duty an insurance agent or broker owes to an insured.  *See, e.g., All Erection & Crane Rental Corporation*, 162 F. App'x at 559; *Momentive Speciality Chemicals, Inc.*, 2012 WL 832288, at *4; *see also Burke*, 2011 WL 2600673, at *3; *J.F. Meskill Enterprises, LLC*, 2006 WL 903207, at *5; *Potts*, 2010 WL 1839738, at *4.  Because the Howells still do not allege non-economic damages flowing from the supposed negligence (*see* Doc. 41-1 at ¶ 59 (asserting only "damages, including but not limited to, inadequate coverage and financial loss arising from claims brought under the new policy" as a "direct and proximate result of the [Third-Party Defendants'] negligence")), the Court's analysis applying the economic loss doctrine stands.  The Court **DENIES as futile** the Howells' request to amend this claim.

3.      *Futility of the Negligent Misrepresentation Claim*

Next, the Third-Party Defendants contend that the Howells' negligent misrepresentation claim would be futile as proposed.  (Doc. 43 at 8–9).  Their reasoning is different than what they argued in their Motion for Judgment on the Pleadings because of the exhibits the Howells attach to their proposed amendment: the Everett Policy and the Mutual Policies.  (*See* Doc. 41-2, 41-3, 41-4).  The latter comprises both a Farmowners Policy and a Farm Excess Policy.  (Docs. 41-3,

17

41-4).

Primarily, the Third-Party Defendants say the plain language of the policies belies the allegation that they supplied the Howells false information. Namely, the Howells' contention that despite the Third-Party Defendants' representations that the Everett Policy contained the same coverage as the Mutual Policies and would be more economical, the Everett Policy was neither. (Doc. 41-1 at ¶¶ 27–37).

The Third-Party Defendants bring up two points. First, both the Everett Policy and the Farmowners Policy provided for the same amount of liability coverage: $1,000,000. (*See* Doc. 43 at 4; Doc. 41-2 at 1 (Everett Policy providing for a personal liability limit of $1,000,000 per occurrence); Doc. 41-3 at 2 (Farmowners Policy providing for a bodily injury and property damage liability limit $1,000,000 per occurrence)). Because of this, they say a representation that the new policy would provide the same coverage as Lora's prior policy would not have been false. (Doc. 43 at 8–9). Further, the Farm Excess Policy doesn't factor into the equation because it requires $300,000 in underlying recreational vehicle coverage to apply. (*Id.*; *see* Doc. 41-4 at 3 (providing for a minimum limit of liability required per underlying policy as to recreational vehicles of $300,000 for bodily injury and property damage)). And, according to the Third-Party Defendants, the underlying Farmowners Policy does not cover recreational vehicles. (Doc. 43 at 8; *see* Doc. 41-3 at 45–46 (providing exclusions to personal liability coverage and listing damage which results from the ownership and operation of recreational motor vehicles)). So the Farm Excess Policy would not provide additional coverage that would push the Everett Policy into "materially inferior" coverage territory.

The Howells' read is different. According to them, the coverage question turns on whether the Polaris ATV was subject to motor vehicle registration. If it was, rather than being considered

18

a recreational motor vehicle under the Everett Policy or the Farmowners Policy, the Polaris ATV would be a motor vehicle.  (Doc. 46 at 3 (citing Doc. 41-2 at 109 (defining "motor vehicle" as a "[self-propelled land or amphibious vehicle], a trailer, or a semi-trailer, and all attached machinery or equipment if: a. it is subject to 'motor vehicle' registration; or b. it is designed for use on public roads."); 41-3 at 43 (same)).  If it was a motor vehicle, both the Everett Policy and the Farmowners Policy would provide up to $1,000,000 in coverage.  Because the Farmowners Policy covers the Polaris ATV, the Farm Excess Policy—which provides an additional $1,000,000 in coverage— would likewise apply.  (Doc. 46 at 5 (citing Doc. 41-4 at 1 (providing for a $1,000,000 limit of liability for farm excess/catastrophe), 6–7 (defining motor vehicle in the same way); *see also id.* at 4–5 (also arguing that the Farm Excess Policy would apply regardless)).  This would bring the coverage under the Mutual Policies to $2,000,000.  Consequently, the Howells say they paid $5,508 per one million dollars of liability coverage under the Everett Policy (Doc. 41-2 at 3), but they previously paid $3,963 per one million dollars of liability coverage under the Mutual Policies (Doc. 41-3 at 3 (Farmowners Policy premium of $7,691); Doc. 41-4 at 1 (Farm Excess Policy premium of $235)).  If that read is correct, the Howells assert that the policies themselves do not undermine the allegation that the Third-Party Defendants supplied them with false information.

Ultimately, the Court agrees that the comparative coverage and premium questions appear to turn on where the Polaris ATV fits into the policies.  That question turns, at least partially, on whether it was subject to motor vehicle registration.  *Compare* Ohio Rev. Code § 4519.02(a)(1) (requiring all-purpose vehicles be registered) *with* Ohio Rev. Code § 4519.01(B) (excluding from the definition of "all-purpose vehicle" utility vehicles defined as a "self-propelled vehicle designed with a bed, principally for the purpose of transporting material or cargo in connection with . . . agricultural . . . activities") *and* Ohio Rev. Code § 4519.02(B)(2) (excluding registration for all-

19

purpose vehicles used primarily for agriculture purposes when the owner qualified for the current agricultural use valuation tax credit unless it is to be used on any public land, trail, or right of way). The answer is not so apparent on the face of the policies themselves that denying leave to amend on futility grounds is proper. The determination requires consideration of a record outside of the proposed amendment and exhibits. It is more appropriate for the parties to raise these arguments on summary judgment.

The Third-Party Defendants further poke at other allegations in the Howells' proposed amendment. In particular, they say that the Howells did not provide enough specifics concerning the allegation that "the Everett Policy imposed more restrictive limitations on where coverage was provided." (Doc. 43 at 9 (citing Doc. 41-1 at ¶ 36)). Similarly, the Howells failed to set forth any specific facts to support their allegation that the Third-Party Defendants "failed to exercise reasonable care or competence in obtaining accurate information regarding the scope and quality of the proposed replacement policy." (*Id.* (citing Doc. 41-1 at ¶ 57)). Still, as before, the Howells identify the relevant false statements, who made them, and when. (*See, e.g.*, Doc. 41-1 at ¶ 37 (alleging on or around July 6, 2023, Fitch advised Lora that the Everett Policy contained the same coverage as the Mutual Policies and would be more economical)); *cf. Bright Street, LLC*, 2018 WL 4560828, at *4. Further, they allege that the Third-Party Defendants held themselves out as experienced insurance professionals with specialized knowledge about insurance coverage and policy limits, but they failed to exercise reasonable care in obtaining accurate information about the scope and quality of the Everett Policy given its alleged deficiencies. (*See, e.g.*, Doc. 41-1 at ¶¶ 22–24, 27, 30, 57). Ultimately, the Court finds these representations sufficient at the pleadings stage. *Cf. Momentive Specialty Chems., Inc. v. Chartis Specialty Ins. Co.*, No. 2:11-CV-583, 2012 WL 6593891, at *3 (S.D. Ohio Dec. 18, 2012) (finding allegations that a defendant's statement

20

about providing notice was false, that notice was not provided, that the plaintiff relied on the statement, and that harm resulted sufficient to state a claim of negligent misrepresentation).

For these reasons, the Court will allow the Howell Defendants to pursue their negligent misrepresentation claim and amend their Third-Party Complaint accordingly.  Their Motion to Amend is **GRANTED** in this respect.

That being said, the Court notes the Third-Party Defendants' representations that several of the Howells' proposed allegations are false compared to the policies at issue.  (Doc. 43 at 2–3). For example, the Howells' proposed amendment states that Farm Excess Policy "clearly provided at least $300,000 in bodily-injury coverage to the Polaris Ranger." (Doc. 41-1 at ¶ 32).  But, say the Third-Part Defendants, when looking at the policy itself, the $300,000 is not relevant to coverage, but rather to the minimum limits of liability required per underlying policy.  (Doc. 43 at 2 (citing Doc. 41-4 at 3); *see also id.* at 3 (making a similar argument concerning the Everett Policy)).  The Howells do not address any of the Third-Party Defendants' suggestions that their allegations are inaccurate.  (*See generally* Doc. 46).  In fact, the Howells' arguments appear to take them in stride.  (*Compare* Doc. 41-1 at ¶ 32 *with* Doc. 46 (arguing that the Farm Excess Policy would have insured the Polaris ATV for an additional $1,000,000)).

While the Court does not view the alleged imprecisions as fatal to the Howells' Motion to Amend, the Court reminds the Howells of their duty under the Federal Rules.  Specifically, the duty to present only, to the best of their knowledge, information, and belief after a reasonable inquiry, claims warranted by law and factual contentions that have or will likely have evidentiary support. Fed. R. Civ. P. 8(b).  The Court will not hesitate to strike allegations that are demonstrably inaccurate based on other parts of their pleading.  To this end, the Court will allow the Howells to adjust their proposed Amended Third-Party Complaint before they file it if they believe that any

21

of their proposed allegations do not conform with Rule 8.

### 4. Futility of Breach of Contract/Quasi-Contract Claim

Finally, the Third-Party Defendants assert that the Howells' newly proposed breach of contract/quasi-contract is futile. (Doc. 43 at 11). The Howells offer this claim as an alternative to negligence. (Doc. 41-1 at ¶¶ 51–79).

Under Ohio law, a contract claim has four pleading requirements: "(a) the existence of a contract; (b) performance by the plaintiff; (c) breach by the defendant; and (d) damage or loss to the plaintiff." *Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002) (citing *Doner v. Snapp*, 649 N.E.2d 42, 44 (1994)). "Further, the existence of a contract, whether implied-in-fact or express, hinges upon proof of the elements of a contract; those being: offer, acceptance, consideration, and a meeting of the minds." *Melher Transp., Inc. v. Westfall Towing LLC*, No. 2:21-CV-1293, 2021 WL 3860190, at *3 (S.D. Ohio Aug. 30, 2021) (citation omitted); *see also Nationwide Children's Hosp. v. Raymath Co.*, No. 3:23-CV-044, 2025 WL 27163, at *2 (S.D. Ohio Jan. 3, 2025) ("Offer and acceptance are essential elements of any binding contract.") (citation omitted). "In an express contract, the assent to the contract's terms is formally expressed in the offer and acceptance of the parties." *Byler v. Air Methods Corp.*, 823 F. App'x 356 (6th Cir. 2020) (quoting *Reali Giampetro & Scott v. Society Nat'l Bank*, 729 N.E.2d 1259, 1263 (1999). "In an implied-in-fact contract, by contrast, 'the meeting of the minds must be established by demonstrating that the circumstances surrounding the parties' transaction make it reasonably certain that the contract exists 'as a matter of tacit understanding.'" *Id*. (citation omitted).

The Third-Party Defendants contend that nowhere in the proposed amendment do the Howells set forth facts regarding an offer, acceptance, or consideration that would support the existence of a contract. (Doc. 43 at 12). Nor do they specify whether the contract at issue was

22

written, oral, or express.  (*Id.*).  Because of this lack of clarity, they say the amendment is futile. (*Id.*)

Up front, the Third-Party Defendants are correct that the Howells' proposed amendment is silent as to what type of contract is at issue.  They do not allege that the parties signed a written contract, nor do they provide one.  They do not say if the contract was oral.  They do not use the words "express" or "implied-in-fact" to describe the contract.  And the only further clarification the Howells provide is that their claim "arises from the Third-Party Defendants' breach of a separate and independent agreement [from the Everett Policy] to procure specific insurance coverage on the Howells' behalf."  (Doc. 46 at 9).

That said, "[a] plaintiff's failure to categorize the legal theory giving rise to a claim does not matter as long as the complaint alleges facts on which relief can be granted."  *Randleman v. Fid. Nat. Title Ins. Co.*, 465 F. Supp. 2d 812 (N.D. Ohio 2006) (citing *Gean v. Hattaway*, 330 F.3d 758, 765 (6th Cir. 2003)).  Here, the Court can read the essential elements of a breach of contract claim into the proposed pleading.  The Howells allege that (1) the Third-Party Defendants represented to Lora that it could procure a new insurance policy with the same coverage as her prior policy (Doc. 41-1 at ¶¶ 27, 56); (2) a contract existed between them (*id.* at ¶ 64); (3) the contract terms included that the Third-Party Defendants would undertake procuring insurance coverage equal to or better than Lora's existing policies (*id.* at ¶ 65); (4) the contract terms included Lora agreed to purchase insurance through the Third-Party Defendants (*id.*); (5) the Third-Party Defendants did in fact procure for Lora an insurance policy (*id.* at ¶ 25); (6) Lora did in fact purchase the policy (*id.* at ¶¶ 34, 58); (7) the procured policy was materially inferior and less economical than Lora's prior policies (*id.* at ¶ 30); and (8) the Howells sustained damages as a result.  (*Id.* at ¶¶ 75–76, 79).

At the very least, these allegations can be read as asserting a claim on an implied contract theory, even in the absence of an express contract. *See Rothwell v. Rothwell*, 104 N.E.3d 836, 840 (Ohio Ct. App. 2018) ("A contract implied in fact is 'a contract that the parties presumably intended, either by tacit understanding or by the assumption that it existed.'" (citations and internal quotation marks omitted)). At the pleading stage, no more is required. *Ramsey v. Allstate Ins. Co.*, 416 F. App'x 516, 521 (6th Cir. 2011) (holding that "specifically ple[ading] a cause of action based on an implied contract" was not required where "the complaint appears to sufficiently set forth the basis for and the facts underlying such a claim). Further, if there is no express contract, "[w]hether there is an implied contract turns on the facts of the particular case." *Id.* (citing *Reali, Giampetro & Scott v. Soc. Nat'l Bank*, 729 N.E.2d 1259, 1264 (1999)). Facts which the Court cannot consider here. Ultimately, it will be the Howells' burden to demonstrate each element of their breach of contract claim. For now, the Court finds the Howells' proposed allegations sufficient at the pleadings stage to put the Third-Party Defendants on notice of the conduct at issue. *See Gerling & Assocs., Inc. v. Odulair, LLC*, No. 2:16-CV-1000, 2017 WL 2790669, at *8 (S.D. Ohio June 28, 2017).

Consequently, the Court **GRANTS** the Howells leave to amend their Third-Party Complaint to include the alternative breach of contract/quasi-contract claim as proposed.

## IV.     CONCLUSION

For the foregoing reasons, the Third-Party Defendants' Motion for Judgment on the Pleadings and the Howell Defendants' Motion to Amend (Doc. 38) are both **GRANTED in part and DENIED in part**.

Specifically, the Court **DISMISSES** the Howells' negligent procurement claim. The Court **GRANTS** the Howells' leave to amend their negligent misrepresentation claim and add a breach

24

of contract/quasi-contract claim, but **DENIES as futile** their request to amend the negligent procurement claim.  The Howells must file their amended Third-Party Complaint, as discussed above, **within seven (7) days**.

       IT IS SO ORDERED.


Date:   March 16, 2026                       /s/ Kimberly A. Jolson
                                            KIMBERLY A. JOLSON
                                            UNITED STATES MAGISTRATE JUDGE